IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| BRANDI L., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 1:25-CV-043-BW |
| | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brandi L. brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act. (*See* Dkt. No. 1.) The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with 28 U.S.C. § 636(b) and Special Order No. 3-350. (*See* Dkt. Nos. 4, 12.)

Plaintiff filed a brief on appeal (Dkt. No. 13) ("P. Br."), to which the Commissioner filed a brief in response (Dkt. No. 17 ("D. Br.")), and Plaintiff filed a reply brief (Dkt. No. 18) ("Reply"). After considering the pleadings, briefs, and administrative record, the Court concludes that the Commissioner's decision must be **AFFIRMED**.

# I. BACKGROUND

On October 19, 2022, Plaintiff protectively filed an application for DIB, alleging disability beginning October 1, 2018.  (*See* Transcript ("Tr.") 178-79.)  Plaintiff later amended her alleged onset date to April 16, 2021.  (Tr. 14, 203.)  In her application, Plaintiff alleges disability due to "(1) Parkinson's Disease; (2) blind or low vision; (3) Trigemenal Neuralgia; (4) Epstein Barr- chronic; (5) Chronic Fati[g]ue Syndrome; (6) currently wearing a heart monito[r]; (7) Migraine [headaches]; (8) Gait Instab[i]lity; (9) insomnia; and (10) depression/anxiety."  (*See* Tr. 218.)  Plaintiff's claim was denied initially on August 24, 2023, (Tr. 91), and again upon reconsideration on March 20, 2024, (Tr. 92), after which Plaintiff timely requested an administrative hearing (Tr. 126).

On May 12, 2022, Administrative Law Judge Edward L. Thompson ("the ALJ") held a telephonic hearing, at which all participants appeared by telephone.  (Tr. 14.)  Plaintiff was represented at the hearing by two non-attorney representatives, William John Wright and Walter Hermann.  (*Id*.)  Clifton A. King, an impartial vocational expert, also appeared and testified at the hearing.  (*Id*.)  The ALJ issued an unfavorable decision on November 6, 2024, finding Plaintiff not disabled between April 16, 2021, and September 30, 2022, the date she was last insured.  (Tr. 11-38.)  On January 10, 2025, the Appeals Council denied Plaintiff's request for further review.  (Tr. 1-3.)  The ALJ's November 6, 2024 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## II. LEGAL STANDARDS

### A. District Court Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. To determine whether substantial evidence of disability exists, four elements of proof must be weighted: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues de novo. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, the court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v.*

3

*Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).  The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)).  "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)).  "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id*. (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

**B.  The Sequential Evaluation Process**

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Copeland*. 771 F.3d at 923 (citing 42 U.S.C. § 423(d)(1)(A)).  The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued

period of 12 months.  *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. § 404.1520(b)-(f)).  On the first four steps of the analysis, the claimant has the initial burden of proving she is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  The burden shifts to the Secretary on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Id.*  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987).

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If the claimant is not engaged in substantial gainful work activity, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or

medically equals the criteria of a Listing and meets the durational requirement, the

claimant is disabled.  *Id*. § 404.1509.  If not, the ALJ determines the claimant's

residual functional capacity ("RFC"), which is the ability to perform physical or

mental work activities on a sustained basis notwithstanding limitations for the

collective impairments.  *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's

RFC permits her to perform the requirements of her past relevant work. 20 C.F.R.

§ 404.1520(f).  If the claimant can perform such requirements, then she is not

disabled.  *Id*.  If an individual's impairment precludes her from performing past

work, the analysis proceeds to the fifth and final step, wherein the burden shifts to

the Commissioner to show that there is other gainful employment available in the

national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at

236.  This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar

evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  ALJ's FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described

above and made the following findings in his November 6, 2024 decision:

1.  The claimant's insured status expired on September 30, 2022.

2.  The claimant did not engage in substantial gainful activity during the
    period from her amended alleged onset date of disability of April 16, 2021,

through her date last insured of September 30, 2022 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: Parkinson's disease and migraine headaches (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except the claimant could frequently balance, stoop, and climb ramps/stairs; and the claimant could occasionally kneel, crouch, crawl, and climb ladders/ropes/scaffolds. Mentally, the claimant could understand, remember, and carry out simple and detailed instructions, but complex instructions. The claimant could make judgements on simple and detailed work-related decisions, but not on complex work-related decisions. The claimant had the concentration, persistence, and pace to focus for normal eight-hour workdays (with normal work breaks that occur about every two hours throughout normal eight-hour workdays) and normal forty-hour workweeks on an ongoing basis. The claimant was able to interact appropriately with co-workers, supervisors, and the public. The claimant was able to respond appropriately to usual work situations and to changes in a routine work setting. The claimant did not have any other physical or mental limitation or restrictions through the date the claimant's insured status expired.

6. The ALJ relies on the Social Security Administration's Expedited Vocational Assessment and makes no finding concerning the claimant's

---

[1] 20 C.F.R. § 404.1567(b): Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

past relevant work; and proceeds to step five of the sequential evaluation process.  (20 CFR 404.1565).

7.  The claimant was . . . 45 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.  The claimant has at least a high school education (20 CFR 404.1564).

9.  Transferability of job skills is not an issue under the Social Security Administration's Expedited Vocational Assessment. (20 CFR 404.1568).

10. Through the date last insured, considering the claimant's age, education, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 16, 2021, the alleged onset date, through September 30, 2022, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-38.)

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on October 19, 2022, the claimant is not disabled under sections 216(i) and 223(d) of the Act through September 30, 2022, the last date insured.  (Tr. 38.)

## IV.  ANALYSIS

Plaintiff raises two arguments on appeal—both contending that the ALJ failed to account for the "total limiting effects" of Plaintiff's migraine headaches and Parkinson's disease, and that the ALJ's decision therefore is not supported by substantial evidence.  (*See* P. Br. at 13-24.)  More specifically, Plaintiff complains that the ALJ erred by failing to incorporate off-task time limitations related to her migraines and additional standing/walking limitations and

reaching/handling/fingering limitations related to her Parkinson's disease into his RFC finding.  (See *id.* at 13-21.)

The Commissioner argues in response that the RFC finding is supported by substantial evidence, including the medical evidence, Plaintiff's subjective complaints, and her activities of daily living.  (D. Br. at 9-14.)  According to the Commissioner, the ALJ discussed treatment records documenting Plaintiff's improvement with treatment for her chronic migraine headaches, physical examination findings that were inconsistent with Plaintiff's statements about her limitations, prior administrative medical findings that Plaintiff's statements were only "partially consistent" with the evidence, and Plaintiff's reports of her subjective complaints and limited daily activities.  (*Id.* (citing Tr. 26-33, 36).)

The Court has reviewed the briefing and the administrative record and determines that the ALJ weighed "all the relevant evidence in [Plaintiff's] case record," 20 C.F.R. § 404.1545(a), and reasonably determined that Plaintiff had the RFC to perform a reduced range light with additional limitations, including mental limitations limiting her to simple and detailed instructions and work-related decisions. (Tr. 23.)  Accordingly, the ALJ's decision is supported by substantial evidence.

### A.   Relevant Medical Evidence

Plaintiff was diagnosed with chronic migraines and early-onset Parkinson's disease prior to her amended alleged onset date of April 16, 2021.  (*See* Tr. 828, 2511.)  Medical records prior to the alleged onset date, however, reveal that

Plaintiff's migraines were controlled by injections and that her Parkinson's disease had not substantially progressed.  Upon physical examination during a February 2021 visit, Plaintiff was observed to have no focal, motor, or sensory deficits, with speech, memory and expressions within normal limits.  (Tr. 829.)  During visits in February and March 2021 for injections of Aimovig (a migraine preventive medication), Plaintiff reported a history of migraines uncontrolled by oral medication, but she was doing well on injections and her number of migraine days had decreased.  (Tr. 2477, 2496.)  On physical examination, Plaintiff was observed to have 5/5 muscle strength in the upper and lower extremities bilaterally.  (Tr. 2478, 2497.)

On March 22, 2021, Plaintiff reported to the Emergency Room at Hardeman County Memorial Hospital, complaining of dizziness and weakness beginning two days earlier.  (Tr. 2487.)   Physical examination results showed cranial nerves grossly intact, 5/5 muscle strength and symmetrical deep tendon reflexes in the upper and lower extremities, and normal sensation to pain, touch, and proprioception.  (Tr. 2490.)  Plaintiff returned to Hardeman County Memorial Hospital for follow-up in April 2021.  (Tr. 2470.)  She was reportedly doing well on Aimovig injection with reduced number of migraine days reported.  (*Id*.)  Physical examination showed cranial nerves II through XII grossly intact; muscle strength was 5/5 in the upper and lower extremities bilaterally; Plaintiff was oriented to person, place, time, and situation with appropriate mood and affect; intact short-term and long-term memory;

and normal judgment and insight. (Tr. 2471.) She was assessed with chronic migraine headache, and Aimovig injection was administered. (*Id*.)

Medical records thereafter in 2021 and 2022 showed relatively controlled migraines and Parkinson's disease. Plaintiff received more Aimovig injections in May, June, and July 2021, and physical examination results again showed grossly intact cranial nerves and 5/5 strength in her upper and lower extremities (Tr. 2443, 2459, 2464.) During a June 2021 follow-up visit with Dianne M. Cooper, M.D., Plaintiff noted that she was taking amantadine for her Parkinsons and "overall she [was] doing better" except for severe leg aches especially in the feet. (Tr. 826.) Dr. Cooper observed that Plaintiff had no acute musculoskeletal findings and no focal motor sensory deficits present. (Tr. 827.)

Plaintiff returned to Hardeman County Memorial Hospital on June 28, 2021, with chief complaint of chronic migraine to be treated with Aimovig injection. (Tr. 2443.) Plaintiff's "longstanding history of chronic migraines uncontrolled by oral medications" was noted, but she was reportedly "doing well on [Aimovig] injections and her number of migraine days ha[d] decreased." (Tr. 2442.) Neurological findings on examination showed cranial nerves II through XII grossly intact; muscle strength was 5/5 in the upper and lower extremities bilaterally; Plaintiff was oriented to person, place, time, and situation with appropriate mood and affect; intact short-term and long-term memory; and normal judgment and insight. (Tr. 2443.)

In a December 2021 follow-up visit with Dr. Cooper, Plaintiff reported she was "doing ok[,] Parkinson's-wise" but complained of constipation. (Tr. 824.) Dr.

11

Cooper observed that Plaintiff had moderate musculoskeletal stiffness and neurological findings consistent with Parkinsons, and that her exam was also consistent with Parkinson's.  (Tr. 825.)

In January 2022, Plaintiff consulted with Sandia Neurology Group regarding her Parkinson's disease; she reported that her right side did not move as well as well as her left, and she had suffered a fall in September 2021 because she missed a step with her right foot.  (Tr. 891.)  Plaintiff reported arthralgias (joint pain), back pain, and joint stiffness; ataxia (poor muscle control), headache, and weakness, but denied dizziness, fainting, memory loss, paresthesia (tingling/numbness), seizures, tremor, or vertigo; and stated that she did not use a cane, walker, or wheelchair.  (Tr. 892.) Regarding activities of daily living, Plaintiff and her family reported that she was independent in ambulation, bathing, dressing, personal hygiene, and feeding.  (*Id*.) Objective findings from physical examination showed no apparent distress; neurological findings showed visual fields intact to confrontation; sensation intact; and motor strength intact.  (Tr. 893-94). Active tremor was noted although there were no signs of bradykinesia; cogwheeling was absent; and postural stability was fair.  (*Id*.)   Plaintiff rose from a chair with one-to-two rocks; her blink rate was normal; and her range of expression was good. (*Id*.)  Assessment included Parkinson's disease; migraine without aura, not intractable, without status migrainosus; and anxiety disorder, unspecified.  (Tr. 894.)

During a follow-up visit with Sandia Neurology Group in late February 2022, Plaintiff reported independence in bathing, dressing, personal hygiene, and feeding;

anxiety, depression, constipation, and excessive urination; and ataxia, headaches, tremors, and weakness. (Tr. 896.) Objective examination findings again showed normal strength in all extremities, no cogwheel rigidity, normal blink rate, and a normal rage of expression. (Tr. 897.)

A brain MRI in March 2022 showed no evidence of acute infarct, mass, or hydrocephalus; subtle abnormal signal in the bilateral substantia nigra; differential was artifact or stigmata of Parkinson's disease; and there was no evidence of volume loss in the bilateral hemisphere with mild chronic microvascular ischemic change in the white matter. (Tr. 922-23.)

During a follow-up with Sandia Neurology Group on April 25, 2022, Plaintiff reported similar activities of daily living and symptoms but also reported her concerns of insomnia. (Tr. 900.) Objective examination results were similar to the January and February 2022 examinations except Plaintiff was observed to rise from a chair without difficulty. (Tr. 900-01.) Assessment included Parkinson's disease with continuation of current medications; migraine without aura with continuation of medications; and primary insomnia with new prescription for trazodone. (Tr. 902.)

Physical examination by Thomas C. Darter, M.D., in May 2022 showed full range of motion of the neck; normal breath sounds; regular cardiac rate and rhythm; normal bowel sounds; normal gait; no focal neurological deficits; and appropriate affect and demeanor. (Tr. 1735-36.) In a June 2022 examination with Sandia Neurology Group, Plaintiff reported increased headaches and noted that Fioricet was not working but sumatriptan was effective. (Tr. 904.) Plaintiff again reported that

13

she was independent in ambulation, bathing, personal hygiene, and feeding.  (*Id*.)
She also reported ataxia, headaches, tremors, and weakness, but she was not using a
walker, cane, or wheelchair.  (*Id*.)  Physical examination noted similar findings to the
April 2022 examination.  (Tr. 904-05.)  Plaintiff was continued on previously
prescribed medications for Parkinson's disease and anxiety; Qulipta was added;
trazodone was discontinued for insomnia; and samples of Belsomra were provided.
(Tr. 906.)

On July 18, 2022, Plaintiff went to Hardeman County Clinic complaining of a
migraine that had lasted several days.  (Tr. 1288.)  She reportedly had missed her
Aimovig injection for two weeks.  (*Id*.)  On physical examination, Plaintiff was
observed to be well appearing, well nourished, and in no apparent distress; cranial
nerves were grossly intact with positive photophobia; psychiatric examination
findings were normal.  (Tr. 1289.)

During an examination with Sandia Neurology Group on August 15, 2022,
Plaintiff reported that her headaches "have been better" and that she had one fall but
that she did not hurt herself.  (Tr. 912).  Plaintiff again reported that she was
independent in ambulation, bathing, personal hygiene, and feeding, but also reported
ataxia, headaches, tremors, and weakness.  (Tr. 912.)  Physical examination findings
were similar to the April and July examinations.  (Tr. 912-13.)

Medical evidence after September 30, 2022, the date Plaintiff's insured status
expired, shows physical examination by Dr. Darter in October 2022 with largely
normal physical findings (Tr. 1739); follow-up visit at Sandia Neurology Group on

November 14, 2022, that was positive for reports of fatigue, headaches, ataxia, tremor, weakness, and joint stiffness but otherwise showed unremarkable findings (Tr. 920); routine medical care at Hardeman County Clinic on January 6, 2023, with largely unremarkable examination results, but Plaintiff complained of weight gain and wanted to explore medication options (Tr, 1294-95) ); and on January 9, 2023, Dr. Darter assessed major depressive disorder; generalized anxiety disorder; adjustment insomnia; and unspecified tachycardia and prescribed medication for treatment of major depressive disorder (Tr. 1743).

Thereafter, in February 2023 and March 2023, examination findings at Hardeman County Clinic similarly showed largely normal physical findings. (Tr. 1298); and in March 2023, Dr. Darter, described Plaintiff as moderately obese and diagnosed Parkinson's disease, major depressive disorder, generalized anxiety disorder; and mixed hyperlipidemia (Tr. 1509, 1747).

## B.   Relevant Opinion Evidence

On August 8, 2023, State Agency Medical Consultant Laurence Ligon, M.D., independently examined the evidence of record as of that date and opined that, through the date last insured, Plaintiff had the physical ability to perform light exertion work, except she could frequently stoop and climb ramps/stairs and occasionally kneel, crouch, crawl, and climb ladders/ropes/scaffolds.   (Tr. 83-90.) Dr. Ligon further opined that, through the date last insured, Plaintiff did not have any other physical or mental limitation or restriction.  (*Id*.)

On March 4, 2024, State Agency Medical Consultant Kavitha Reddy, M.D., independently examined the evidence of record as of that date and opined that, through Plaintiff's date last insured, she had the physical ability to perform light exertion work, except she could frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; and she could occasionally climb ladders/ropes/scaffolds.  (Tr. 93-102.)  Dr. Reddy further opined that, through the date last insured, Plaintiff did not have any other physical or mental limitation or restriction.  (*Id*.)

## C. The ALJ's RFC Finding was Supported by Substantial Evidence.

RFC is what an individual can still do despite her limitations.  Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id*.; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id*.  The RFC is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and it is based upon all of the relevant evidence in the case record.  *Id*. at 3-6.  The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record.  20 C.F.R. § 404.1546(c); *see also Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

16

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

17

**1. The ALJ appropriately applied SSR 19-4p to evaluate the consistency of Plaintiff's headache symptoms with the objective medical evidence.**

At step two, the ALJ found that Plaintiff had a medically determinable impairment of primary headache disorder.  (Tr. 17.)  Plaintiff asserts that the ALJ erred in evaluating her primary headache disorder because his RFC finding failed to consider "the most obvious effect of Plaintiff's headaches, that she is off task during them."  (P. Br. at 17-21.)

The definition of medically severe impairment at step two "has a specific—if somewhat surprising—meaning."  *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).  "Phrased in the negative, an 'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"  *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (alteration in original) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).  "This second step requires the claimant to make a *de minimis* showing."  *Salmond*, 892 F.3d at 817.

In support of her argument, Plaintiff first faults the ALJ for not referencing SSR 19-4p in his RFC analysis.  (*See id*. at 17.)  SSR 19-4p details how ALJs establish that a person has a medically determinable impairment of primary headache disorder and how the ALJ should evaluate primary headache disorders in disability claims.  SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019).  Although Plaintiff acknowledges that the ALJ referenced SSR-19-4p to support his finding that migraine headaches

18

was a medically determinable impairment and that her mental impairments were primarily the result of her migraine headaches, Plaintiff contends that the ALJ erred because he failed to discuss SSR 19-4p in his RFC analysis. (P. Br. at 17.) SSR 19-4p provides the following guidance regarding how ALJs consider primary headache disorder when assessing a claimant's RFC:

> We consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC.

SSR 19-4p, 2019 WL 4169635, at *8.

Contrary to Plaintiff's argument, this is precisely that the ALJ did. The ALJ weighed Plaintiff's statements about her headache symptoms and limitations and considered whether these statements were consistent with the objective medical evidence and the other evidence of record. 20 C.F.R. § 404.1529(c). Ultimately, the ALJ found that Plaintiff's statements were inconsistent with "the treatment records on physical examination for the period from April 16, 2021, the amended alleged onset date, and September 30, 2022, the date last insured." (Tr. 27.) *See* SSR 96–7p, 1996 WL 374186, at *2 ("whenever the individual's statements . . . [regarding her] symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"); 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also James v. Bowen*, 793 F.2d 702, 706 (5th Cir.1986) (An "ALJ's findings

regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference").

First, the ALJ noted that Plaintiff's "history of migraine headaches [was] well documented in her treatment records," and while oral medications were generally not effective for treating her migraine headaches, she "repeatedly reported effectiveness of Aimovig injections for headache relief as well as reduction in the number of headache events well on his medication." (Tr. 17.) The ALJ went on to cite the treatment records that documented Plaintiff's reports of favorable response to Aimovig injections for treatment of her chronic migraine headaches. (Tr. 29-33, 36.) Specifically, Plaintiff reported that her migraines were uncontrolled by oral medication, but she was doing well on Aimovig injections, and her number of migraine days had decreased. (Tr. 2442, 2458, 2477, 2496, 2510.) Notably, medical records documenting Plaintiff's treatment with Aimovig injections did not specify the intensity, duration, or frequency of her headaches. (*Id.*) Plaintiff reported suffering from headaches during neurology visits regarding her Parkinson's disease, but the record is likewise silent on the intensity, duration, and frequency of the headaches. (Tr. 892, 896, 904, 912.)

The ALJ also noted treatment records indicating that Plaintiff reported "worsening and frequent" headaches during a neurology visit in June 2022; however, she also reported that although Fioricet was not working, sumatriptan was effective. (Tr. 33, 904.) Plaintiff also visited Hardeman County Clinic in July 2022, complaining of a migraine that had lasted several days, but in that instance, she had

reportedly missed two weeks of Aimovig injections and received IV medication during the visit. (Tr. 1288-90.) Plaintiff also reported improvement with headaches during a neurology visit in August 2022. (Tr. 33, 912.)

The ALJ also relied on the findings of Dr. Ligon and Dr. Reddy, both of whom opined that Plaintiff could perform light work with noted limitations. (Tr. 22, 35-36.) The ALJ found that Dr. Ligon's and Dr. Reddy's opinions were "well-supported by the evidence; [] consistent with the evidence; and [] persuasive." (Tr. 22.) The ALJ also found that to the extent Dr. Ligon's and Dr. Reddy's opinions differed, any differences were resolved in Plaintiff's favor, and the more restrictive physical functional limitations were adopted. (Tr. 36.)

Plaintiff also contends that the ALJ erred in evaluating her subjective complaints by failing to discuss her evidence of more limited daily activities as required by 20 C.F.R. § 404.1529(c). (P. Br. at 23.) But the ALJ's decision reveals that he evaluated Plaintiff's more limited daily activities when he described her alleged change in activities and noted that daily activities were one factor to be considered. (Tr. 26-27.) The regulations do not require a more expansive discussion. *See Guillory v. Saul*, 2021 WL 1600283, at *11 (E.D. Tex. Apr. 23, 2021) (ALJ decision reflected compliance with § 404.1529(c) when ALJ cited pertinent regulations, summarized evidence relevant to the factors, and articulated legitimate reasons for his decision). Thus, the ALJ correctly evaluated Plaintiff's subjective complaints under the factors set forth in 20 C.F.R. § 404.1529(c).

But even if the ALJ did not explicitly cite SSR 19-4p in the RFC analysis, this is not legal error.  *See Keel*, 986 F.3d at 556 ("A case will not be remanded simply because the ALJ did not use 'magic words.'") (citing *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)).  SSR 19-4p's requirement that the ALJ consider "the extent to which the person's impairment-related symptoms are consistent with the evidence in the record" is effectively identical to the standard for evaluating subjective complaints generally, set forth in in 20 C.F.R. § 404.1529 and SSR 16-3p, also cited by the ALJ.   (*See* Tr. 24.)  As discussed above, the ALJ's decision makes clear that, irrespective of whether he cited SSR 19-4p, he applied the correct standard by considering whether Plaintiff's subjective complaints of debilitating migraines were consistent with the evidence for the relevant time period.  (Tr. 25-36.)  Thus, the ALJ complied with the requirements of 20 C.F.R. 404.1529, SSR 19-4p, and SSR 16-3p, even if he did not explicitly cite SSR 19-4p in the process of doing so.

### 2. The ALJ reasonably concluded that the RFC did not require off-task-time limitations related to Plaintiff's headaches.

Plaintiff next argues that the ALJ erred by failing to include limitations for off-task time in the RFC to account for her primary headache disorder.  (*See* P. Br. at 18-21.)  Specifically, Plaintiff contends that: the ALJ: (1) failed to provide a required explanation on why he failed to include time-off-task limitations; (2) ignored negative findings that supported time-off-task limitations; and (3) failed to account for the "good days/bad days" nature of the migraine disorder.  (*Id*.)  Without citing any legal authority, Plaintiff appears to argue that off-task time is an "obvious effect"

22

of headaches, and therefore the ALJ should have included it in the RFC. (*Id.* at 18.) But there is simply no objective medical evidence to support Plaintiff's contention that the ALJ should have included a time-off-task limitation for in the RFC. Nor does Plaintiff cite any record evidence suggesting that any of her providers assigned any limitations based on her headaches. (*See generally id.*) An ALJ does not have to assign limitations in the RFC unless the medical providers, examiners, or consulting physicians assigned such limitations." *Stewart v. Comm'r Soc. Sec.*, No. 3:23-CV-134-DAS, 2024 WL 1747649, at *3 (N.D. Miss. Apr. 23, 2024).

As discussed above, medical records during the relevant time period noted that Plaintiff reported headaches but did not specify the severity, frequency, or duration of the headaches, aside from reporting that Aimovig was effective at reducing the number of headaches. (Tr. 892, 896, 904, 912, 2442, 2458, 2477, 2496, 2510.) Thus, contrary to Plaintiff's assertion that the ALJ "picked and chose" only those record references that supported the ALJ's RFC finding (*see* P. Br. at 21), the record was essentially devoid of any information from which the ALJ could have determined that an off-task time limitation was required and, if so, how much time off task was necessary. Instead, given the lack of information record information regarding the severity of Plaintiff's migraine disorder, the ALJ reasonably concluded that no off-task time limitations were necessary. *See Cooper v. Kijakazi*, No. 4:22-CV-118-DAS, 2023 WL 2467880, at *2 (N.D. Miss. Mar. 10, 2023) (affirming the Commissioner's denial of benefits where the plaintiff received treatment for headaches but her examination findings were normal, she indicated that over-the-

23

counter medications helped relieve her symptoms, and her complaint of the aggravating effects of noise and stress was only documented once in the record and not corroborated by any objective medical evidence); *Esperanso G. v. Comm'r, Soc. Sec. Admin.*, No. 1:24-CV-20-BK, 2025 WL 919390, at *8 (N.D. Tex. Mar. 26, 2025) (affirming Commissioner's denial of benefits and finding that the ALJ's decision not to assign limitations due to headaches was supported by substantial evidence).

Although Plaintiff maintains in her reply that the ALJ failed to adequately consider the evidence regarding her ongoing headaches (*see generally* Reply), substantial evidence, including the clinical findings and objective medical records, the opinions of two state agency consultants, Plaintiff's subjective statements regarding her headache symptoms and limitations, and her reports of her daily activities, supports the ALJ's disability decision.  *See Wren*, 925 F.2d at 126.  While Plaintiff may disagree with the ALJ's conclusions, her arguments amount to nothing more than an invitation for the court to reweigh the evidence and second-guess the ALJ's decision not to include an off-task limitation, which is not proper under the substantial evidence standard of review.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (providing that a reviewing court may not reweigh the evidence or substitute its judgment for the ALJ's judgment even if the evidence weighs against the ALJ's determination); *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *see also Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).  Accordingly, the

Court finds no error in the ALJ's RFC decision not to include off-task time limitations in the RFC finding.

### 3. The ALJ reasonably concluded that the RFC did not require additional standing/walking limitations and reaching/handling/fingering limitations related to Plaintiff's Parkinson's disease.

Plaintiff's argument that the ALJ erred by failing to add additional standing/walking limitations and reaching/handling/fingering limitations related to her Parkinson's disease into her RFC (*see* P. Br. at 21-22) fails for similar reasons. Plaintiff asserts, in essence, that evidence of self-reported stiffness, observed tremors, and exhaustion warranted additional limitations in reaching, handling, and fingering and self-reported falls and observed shuffling gait warranted greater standing and walking limitations. (*See* P. Br. at 21-22.) But in addition to noting the above reported and observed symptoms, the ALJ also considered the medical evidence in making his RFC assessment, including largely normal objective musculoskeletal and neurological findings during the relevant period. (Tr. 23-36.)

For example, throughout 2021 and 2022, treatment records show that Plaintiff's providers routinely observed that she had grossly intact cranial nerves, normal strength in all extremities, and intact reflexes and sensation. (Tr. 829, 893-94, 897, 1735-36, 2478, 2490, 2497.) Her neurologist also observed no cogwheel rigidity, fair postural stability, ability to rise from a chair; normal blink rate; and normal range of expression. (Tr. 894, 897, 912-13.) The ALJ also noted reports that Plaintiff was independent with bathing, dress, personal hygiene, and feeding. (Tr. 32-33, 892, 896, 904, 906.)

25

Finally, although Plaintiff insinuates that the ALJ found that she "*never* has Parkinson's -related symptoms" (*see* P. Br. at 22), the decision clearly shows that the ALJ found that Plaintiff's Parkinson's disease warranted limiting her to light work with additional postural limitations as described in the RFC. (Tr. 23-36). Although Plaintiff contends that the restrictions in the RFC are inadequate, the RFC need only include limitations that the ALJ found supported by the evidence. *Moore v. Barnhart*, 182 F. App'x 321, 323 (5th Cir. 2006); *Surgi v. Barnhart*, 168 F. App'x 555, 558, (5th Cir. 2006) (it is the ALJ's responsibility to determine an individual's RFC). Here, other than citing a few reports of stiffness, exhaustion, and falls and observations of tremors and shuffling gait, Plaintiff cites no objective medical evidence to support any additional limitations beyond those included in the RFC. (*See* P. Br. at 21-22. (citing Tr. 30-33).)

As the ALJ explained, "[n]eurological examinations from a variety of clinicians, including neurologist[s], do not document abnormalities that could reasonably be expected to explain the limitations alleged and described by [Plaintiff]." (Tr. 36.) Accordingly, the record does not demonstrate that further limitations were necessary. *See Wilson v. Barnhart*, 210 F. App'x 448, 450-51 (5th Cir. 2006). As explained above, Plaintiff's arguments amount to a request to re-weigh the evidence to reach a different conclusion, which is not allowed under the substantial evidence standard. *Bowling*, 36 F.3d at 434.

Based on the foregoing, Plaintiff has failed to demonstrate either that improper standards were used to evaluate the evidence or that the final decision was not supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is **AFFIRMED**, and this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** on January 26, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE